UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SHIRLEY ROCKWELL,

      Plaintiff,

  V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

      Defendant.

**REPORT AND RECOMMENDATION**

12-CV-792
(DNH/VEB)

---

## I. INTRODUCTION

In November of 2008, Plaintiff Shirley Rockwell applied for Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since May of 2008 due to physical and emotional impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, Olinsky Law Group, Tanish T. Bramwell, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 22, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

---

[1] On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for benefits on November 6, 2008, alleging disability beginning on May 17, 2008. (T at 106-110, 129, 134).[2] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 15, 2010, in Utica, New York before ALJ Elizabeth Koennecke.[3] (T at 27). Plaintiff, represented by counsel, appeared and testified. (T at 31-58). On July 29, 2010, ALJ Koennecke issued a written decision denying Plaintiff's application. (T at 6-26). The ALJ's decision became the Commissioner's final decision on March 30, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on May 11, 2012. (Docket No. 1). The Commissioner interposed an Answer on September 25, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on November 1, 2012. (Docket No. 11). The Commissioner filed a Brief in opposition on January 15, 2013. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

For the reasons that follow, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and that this case be dismissed.

---

[2] Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[3] The ALJ presided from Syracuse, New York via videoconference. (T at 29).

[4] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

### A.     Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[5]

---

[5]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (May 17, 2008) and met the insured status requirements of the Social Security Act through December 31, 2013. (T at 11). The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and an anxiety disorder. (T at 11-12). However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 12-15).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk between 4 and 6 hours in an 8-hour workday; and sit on an unlimited basis. (T at 15). The ALJ determined that Plaintiff maintained the ability (on a sustained basis) to understand,

carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. (T at 15).

The ALJ found that Plaintiff was unable to perform her past relevant work as an accounting clerk due to her mental limitations. (T at 19).

Considering Plaintiff's age (41 years old on the alleged onset date), education (high school), work experience, and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 19-21). As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from the alleged onset date (May 17, 2008) to the date of her decision (July 29, 2010). (T at 21).

As noted above, the ALJ's decision became the Commissioner's final decision on March 30, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments in support of this position. First, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence. Second, Plaintiff challenges the ALJ's credibility assessment. Third, Plaintiff contends that the ALJ's step five analysis was flawed. This Court will address each argument in turn.

#### a. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily,

RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

As noted above, the ALJ concluded that Plaintiff retained the RFC to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand/walk between 4 and 6 hours in an 8-hour workday; sit on an unlimited basis; understand, carry out, and remember simple instructions on a sustained basis; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. (T at 15).

Plaintiff challenges this determination on two (2) grounds.

### i. Consideration of Nurse Nelson's Opinion

Plaintiff contends the ALJ erred by discounting an opinion provided on May 20, 2010, by Berit Nelson, a treating nurse practitioner. Nurse Nelson opined that Plaintiff could occasionally lift/carry up to 10 pounds, but never more than that; sit for 5 hours in an 8-hour work day (but only 4 hours at one time without interruption); stand for 3 hours in an 8-hour work day (2 hours at one time without interruption); and walk for 1 hour in an 8-hour work day. (T at 517-18). Nurse Nelson assessed that Plaintiff was limited to occasional

7

pushing and pulling and operation of foot controls with her left foot. (T at 519). Nurse Nelson opined that Plaintiff could occasionally stoop and climb stairs and ramps; but could never climb ladders or scaffold, balance, kneel, crouch, or crawl. (T at 520). Nurse Nelson reported that Plaintiff's anxiety was "under good control." (T at 516).

The ALJ afforded "some weight" to Nurse Nelson's opinion, but discounted the nurse practitioner's assessment that Plaintiff was limited to sitting 5 hours (and 4 hours at one time without interruption) during an 8-hour work day. (T at 18-19). This Court finds that the ALJ's decision was supported by substantial evidence.

First, nurse practitioners are not considered "acceptable medical sources" under the Regulations and, thus, their opinions are not presumptively entitled to enhanced weight.[6] 20 C.F.R. § 416.913(a). The Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence . . . ." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995).

Second, Nurse Nelson's assessment was contradicted (and the ALJ's decision is supported) by a February 2009 opinion provided by Dr. Francis Chabot, Plaintiff's treating physician. Dr. Chabot opined that Plaintiff could occasionally lift/carry 10 pounds and stand/walk for 6 hours in an 8-hour work day. (T at 276). Dr. Chabot reported that Plaintiff had no limitation with regard to sitting or pushing/pulling. (T at 276). The ALJ reasonably

---

[6]The opinion of a "treating source" is entitled to special weight under the Social Security Regulations. A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502. There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Nurse Practitioners are not included among the "acceptable medical sources" and their opinions are thus not entitled to any special weight. Rather, they are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913 (d)(1).

8

placed "substantial weight" on Dr. Chabot's opinion and granted it more weight than Nurse's Nelson's assessment. In particular, (as discussed above) Nurse Nelson is not considered an "acceptable medical source," a treating physician's assessment is presumptively entitled to controlling weight under the Social Security Regulations,[7] and Dr. Chabot's opinion was supported by the other evidence of record, including (as discussed further below) the consultative examiner's assessment.

Third, Nurse Nelson's May 2010 was contradicted, in part, by her own opinion of February 2009, in which she indicated that Plaintiff could sit on an unlimited basis. (T at 283). Plaintiff does not address Nurse Nelson's earlier assessment or the opinion provided by Dr. Chabot and does not point to any medical evidence of significant deterioration in her condition between February of 2009 and May of 2010.

Fourth, the ALJ's decision is supported by the report of Dr. Kalyani Ganesh, a consultative examiner. Dr. Ganesh found full range of motion in Plaintiff's shoulders, elbows, forearms, wrists, hips, knees, and ankles. (T at 271). Dr. Ganesh noted full muscle strength in upper and lower extremities, with no evidence of muscle atrophy. (T at 271). Dr. Ganesh assessed no gross physical limitations for sitting, standing, or walking and

---

[7]Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

"mild-to-moderate" limitations with regard to lifting, carrying, pushing, and pulling. (T at 271). An ALJ is entitled to rely upon the opinions of State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."). Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

Accordingly, this Court finds that the ALJ's decision to discount Nurse Nelson's May 2010 opinion was supported by substantial evidence and consistent with applicable law.

### ii. Stress

Plaintiff also contends that the ALJ erred by not making an explicit finding with regard to her ability to manage work-related stress.

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational

base." Id.

The ALJ concluded that Plaintiff retained the RFC to respond appropriately to supervision, co-workers, and usual work situations and to deal with changes in a routine work setting. (T at 15). The ALJ's decision was supported by substantial evidence.

Plaintiff points out, correctly, that Dr. Dennis Noia, the psychiatric consultative examiner, noted that Plaintiff "appears to have some difficulty dealing with stress." (T at 267). However, Dr. Noia nevertheless concluded that Plaintiff could understand and follow simple instructions and directions. (T at 267). In particular, he found that Plaintiff could maintain attention and concentration for tasks, learn new tasks, and regularly attend to a routine and maintain a schedule. (T at 267). Dr. Noia further concluded that Plaintiff appeared to be capable of making appropriate decision and could relate to and interact with others "moderately well." (T at 267). Dr. Noia's overall opinion supports the ALJ's assessment. Although the ALJ did not specifically address Dr. Noia's reference to Plaintiff's difficulties with stress, the consultative examiner's opinion (when considered as a whole) supports the conclusion that Plaintiff can perform the basic mental demands of unskilled work, notwithstanding some difficulty managing stress.

Plaintiff also notes that T. Inman-Dundon, the non-examining State Agency review consultant, assessed moderate limitations with regard to Plaintiff's ability to maintain attention and concentration for extended periods and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. (T at 279). The consultant also noted "moderate limitations in dealing with stress" and opined that Plaintiff could perform "entry level work not working with the general public." (T at 281). The consultant reported that Plaintiff could understand and following simple instructions and

11

directions, make appropriate decisions, and relate to and interact moderately well with others. (T at 281). The ALJ afforded "some weight" to the consultant's report, finding that it was "not inconsistent with performing the basic mental demands of unskilled work." (T at 17-18). This Court finds no reversible error in this assessment. Although the consultant's opinion might be read as providing for somewhat greater limitations than those assessed by the ALJ, the report of the consultative examiner (who actually examined Plaintiff) supported the ALJ's conclusion. "Conflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. Here, the non-examining consultant did not assess any marked limitations in functioning (T at 279-80), the consultative examiner opined that Plaintiff could perform the basic mental demands of unskilled work (T at 267), Plaintiff was capable of performing a wide array of activities of daily living (discussed further below), and the treating nurse practitioner reported in May of 2010 that Plaintiff's anxiety was "under good control" with prescription treatment and counseling. (T at 516). Under the circumstances, the ALJ's conclusion that Plaintiff retained the RFC to perform the basic mental demands of unskilled work rests on adequate findings supported by evidence having rational probative force. As such, this Court concludes that the ALJ's conclusions were supported by substantial evidence.

    **b.**  **Credibility**

A claimant's subjective complaints are an important element in disability claims, and

must be thoroughly considered. See See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must

consider the following factors in order to make a determination regarding the plaintiff's credibility:

>    1.   [Plaintiff's] daily activities;
>    2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
>    3.   Precipitating and aggravating factors;
>    4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
>    5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
>    6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
>    7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: She is unable to drive due to panic attacks and anxiety. (T at 33). She left employment as a convenience store cashier in 2008 because of left leg numbness, back pain, and panic-anxiety disorder. (T at 36-37). Plaintiff also suffers from premenstrual dysphoric disorder and depression, along with migraine headaches. (T at 42-43). When experiencing a pain attack, Plaintiff shakes, has trouble breathing, refuses to leave her home, avoids social interactions, and sleeps a lot. (T at 43). She also has racing thoughts, fearfulness, suicidal ideation, short-term memory loss, and frequent crying. (T at 43-44). She paces back and forth when in an anxious state and is

14

easily irritable. (T at 44-45). Her condition has worsened over the past five years. (T at 46). Plaintiff's medications causes blurred vision, restlessness, and fatigue. (T at 46). She has three herniated discs in her back and experiences constant pain (on average, a 6 out of 10). (T at 48). She could lift a gallon of milk, but would need two hands. (T at 50). Crouching or stooping hurts her back. (T at 50). She cannot stand or sit for long periods of time. (T at 50-51). She has difficulty reaching with her left arm and trouble grasping with her left hand. (T at 52). Walking is difficult due to weakness in her left leg. (T at 53).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T at 17). Plaintiff challenges the ALJ's credibility determination, by pointing to several pieces of evidence that support her allegations.[8]

However, "[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility

---

[8]For example, the ALJ noted that Plaintiff took a trip to Florida in an automobile and did not report any adverse effects from the prolonged sitting. (T at 17). However, Plaintiff notes that Nurse Nelson prescribed painkillers for Plaintiff's use during the trip (although it is not clear whether she actually used the medication). (T at 322).

15

assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). As discussed above, the ALJ's assessment of Plaintiff's exertional and non-exertional limitations was supported by the opinions of Plaintiff's treating physician, the orthopedic consultative examiner, the psychiatric consultative examiner, and a State Agency review consultant. Plaintiff also engaged in a variety of activities of daily living, including personal care, housework, using a computer, helping to care for her three young children, interstate travel, caring for her husband following an accident, and distance walking on a daily basis. (T at 17).

There is no question that Plaintiff lives with pain , as the record documents frequent complaints and treatment. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A). For the foregoing reasons, this Court finds that the ALJ's credibility assessment is supported by substantial evidence and should be sustained.

### c. Step 5 Analysis

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. §

17

404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching her disability determination and concluding that Plaintiff was not disabled under the framework of section 201.28 in the Medical-Vocational Guidelines. (T at 20-21). As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06). When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. Id. A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

The ALJ found that Plaintiff's non-exertional impairments had little or no effect on her occupational base of unskilled sedentary work. (T at 20-21). For the reasons outlined above, this finding was supported by substantial evidence (including the treating physician's opinion, the consultative examiners' reports, and the assessment of the State Agency psychiatric review consultant).

18

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiners, and the non-examining consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: July 3, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 3, 2013

*[signature]*

Victor E. Bianchini
United States Magistrate Judge